**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

UNITED STATES OF AMERICA, )
)
Plaintiff, )
v. ) Civil Action No. 4:70-cv-01616-MP
) Judge Mark E. Walker
JACKSON COUNTY SCHOOL BOARD, *et al.*, )
)
Defendants. )
)

# UNOPPOSED MOTION FOR DECLARATION OF FULL UNITARY STATUS

Defendant, Jackson County School District (the "District") moves this Court for a Declaration of Full Unitary Status and dismissal of this matter. As grounds for this Motion, the District states:

## PROCEDURAL BACKGROUND

1. Plaintiff, the United States of America, initiated this lawsuit against the District on July 9, 1970, seeking to enjoin the District and five other surrounding county school districts in Gadsden County, Gulf County, Jefferson County, Lafayette County, and Wakulla County in a consolidated action from operating a dual school system based on race.[1]

[1] The Gulf, Lafayette, Wakulla and Jefferson County School Districts have previously been declared unitary by this Court.

2. On July 9, 1970, the Court entered an order *pendente lite*, requiring that the parties collaborate in preparing plans for the immediate conversion to unitary non-discriminatory school systems as required by the United States Court of Appeals for the Fifth Circuit in *Singleton v. Jackson Municipal Separate School District,* 419 F. 2d 1211 (5th Cir. 1969) (*en banc*).

3. On August 12, 1970, this Court issued its order ("August 1970 Order") adopting the United States' plan for desegregation, with the exception of a particular aspect involving pairing of two schools, St. Paul School and Graceville School. August 1970 Order at 2-3. On September 20, 1976, the Court issued a subsequent order ("September 1976 Order") permanently enjoining the District from "operating a dual system of racially identifiable schools." September 1976 Order at 1. The Court ordered the District to: (1) take no action which tends to segregate students or faculty by or within schools on the basis of race, color, or national origin; (2) ensure that staff and administrators are hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin; (3) permit majority to minority student transfers; (4) ensure bus transportation is provided on a nondiscriminatory basis; (5) ensure that all school construction, consolidation, and site selection are done to prevent the recurrence of a dual system; and (6) ensure that all inter-district transfers are permitted on a non-discriminatory basis, except that they will not be permitted "where the cumulative effect will reduce desegregation" in Jackson or the other school district. *Id.* at 1-3. The Court retained jurisdiction to enforce the permanent injunction.

4. On November 2, 2016, the District filed a motion requesting a finding of unitary status regarding facilities or, in the alternative, permission to construct a new school in Marianna. ECF No. 68. On December 15, 2016, the United States filed a response to the district's motion opposing a declaration of unitary status until it could complete a full review but stating its lack of opposition to the construction. ECF No. 75. Thereafter, on December 29, 2016, the court denied the motion for declaration of unitary status but granted permission for construction. ECF No. 76. The school was then constructed.

5. The Court's subsequent Consent Order of May 29, 2018, granted the District partial unitary status in four areas: enrollment; transportation; facilities; and extracurricular activities. ECF No. 93. The Court retained supervision over the case and ordered remedial plans in relation to faculty and staff recruiting, hiring, and promotion (including twelve guidelines), and student assignment (within school) and discipline (including eleven guidelines).

6. The Court's order was also followed closely by the landfall in Jackson County of a Category 5 hurricane (Hurricane Michael, in October 2018), a cyber-attack on the District's IT systems, the nationwide COVID-19 pandemic, and the effects of Hurricane Helene in 2024. These factors have contributed in varying degrees to the delayed submission of this request for full unitary status.

7. On July 10, 2023, the Court entered its order on unitary status as it relates to the faculty and staff recruiting, hiring and promotion leaving a sole issue, that of student discipline. ECF 127. The District now moves for a Declaration of full and Final Unitary Status.

8. As it relates to student discipline, the District was to:

a) *Revise the 2018-19 Code of Conduct and provide a draft to the United States prior to adoption*, to ensure that it includes: 1) positive behavior expectations communicated in student-friendly language; 2) clear definitions and objective criteria for behavior infractions and appropriate responses; 3) continued use of a tiered Student Behavior Referral Form; 4) limits on exclusionary discipline for low-level offenses; 5) strategies to minimize loss of instructional time and support makeup work; 6) specific consequences for repeated violations; and 7) criteria for returning students to their home schools. This task has been completed.

b) *Provide training to all new/incoming teachers each fall*. This has been a key foundation of the Jackson County District onboarding process. Not only are the new/incoming teachers provided with training prior to each school year, school administrators also participate in a "boot camp" which emphasizes the core nature of their duties and includes modules on school discipline and a focus on sensitivity to possible racial disparities.

c) *Include standardization of subjective referrals*. To assist with this goal, the District has required that all referrals for alternate placement and expulsion must be reviewed by district office supervisors prior to any change of placement. The District also purchased an addition to its information and data management software program (FOCUS) which provides a more effective tool for the analysis of disciplinary data for supervisory review. District staff also meets with assistant principals at least quarterly to provide input and support for the review of discipline data related to trends within a specific school

setting. The District has created a position entitled "manager of student data" (currently filled by A. Barber). Among her other achievements, A. Barber has developed a methodology for and has generated reports in FOCUS for school-based administrators which allows each administrator to review student discipline data both in real time and in historical perspective.

d) *Provide additional training to teachers who have experienced high referral rates according to available data*. Specific teachers revealed by the data analysis to have experienced a high rate of classroom referrals are referred to District-level officials, K. Nobles and C. McNeil, for additional support. Additional training efforts for such teachers were implemented in the 2022 school year, which include: 1) annual training for any District employee involved in student discipline (including, e.g., teachers, administrators, and bus drivers) to ensure consistency and nondiscriminatory practices; 2) implementation of a program called "Handle With Care" (https://handlewithcarefl.org) which identifies and assists with students who have been traumatized from a variety of sources (this program helps the District identify students possibly affected by trauma to provide each student with trauma-related intervention and care, rather than discipline, when appropriate); 3) implementation of Crisis Prevention Intervention training (served by District Administrator, R. Suggs); 4) in furtherance of reducing the necessity for discipline, implementation of "resiliency training" for staff; and 5) implementation of new initiatives promoted by the State Department of Education to empower students, parents, teachers, and extended family members to prevent disciplinary issues through character-building and problem-solving methods.

e) *Meet at least once per nine-week period to review progress and recommend improvements*. As noted above, in order to provide a more comprehensive data review, data review takes place quarterly, rather than each nine weeks.

f) *Conduct assemblies or classroom meetings to communicate expectations and disciplinary process in age-appropriate ways*. At the beginning of each school year, each middle school and high school conducts assemblies to communicate discipline expectations and values. The District's elementary schools provide this information through "meet-the-teacher" programs held in each class. These typically occur at the beginning of each school year.

g) *Hold at least one informational session per year to explain core values, discipline rules, due process rights, and provide space for parent questions*. The District holds two Advisory Council meetings each year. The Council is composed of District Directors, school-based administrators, School Advisory Council chairpersons, community members, and parents. It serves as a forum for collaboration and feedback on district initiatives and planning efforts. Topics typically addressed during these meetings include the District Engagement Plan, the Student Code of Conduct, the Student Progression Plan, and overall District Improvement Themes.

9. The United States has actively monitored the District for more than 50 years and issued periodic requests for information from the District, generally targeted at gathering data and other information related to the Court's orders and the District's affirmative desegregation obligations. The District has responded to each of the United States' requests for information, and the United States has fully and carefully reviewed and analyzed these

responses. Representatives from the United States have periodically visited the District, toured several elementary, middle, and high schools, and interviewed relevant school and district personnel.

## LEGAL STANDARD

10. To obtain a declaration of unitary status, the District must show that it has: (1) fully and satisfactorily complied with the Court's decrees for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50 (1991).

10. As demonstrated above, the District has fully and satisfactorily complied with the provisions of the Court's 2018 Order regarding student discipline for a reasonable period of time. Moreover, this Court had previously found the District in compliance with all other orders in this case. Accordingly, the District requests that the Court grant the District a Declaration of Full Unitary Status and withdraw its supervision, dissolve the permanent injunction, and dismiss all related elements of this case.

## CERTIFICATION OF CONFERENCE WITH THE UNITED STATES

11. The District has worked closely with United States and its counsel in resolving the issues before the Court. The District has consulted monthly with the United States regarding the issues contained herein and continued to provide data and receive input

from the United States. The United States does not oppose this Motion and the District being declared fully unitary.

## CONCLUSION

For the foregoing reasons, the District respectfully moves that this Court declare full and final unitary status relinquish jurisdiction over this matter and dismiss the case in its entirety.

Respectfully submitted

H. MATTHEW FUQUA
Florida Bar No. 0451101
Fuqua and Milton, P.A.
4450 Lafayette Street (32446)
Fuqua & Milton, P.A.
Post Office Box 1508
Marianna, FL 32447
(850) 526-2263
mfuqua@fmc.legal
*Attorney for Defendant, Jackson County School District*

## CERTFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Status Report was filed electronically with the Court on this September 15, 2025. Service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

H. MATTHEW FUQUA
Florida Bar No. 0451101